## DANIELS and Another *v.* LITTLE and Others.

Prior to the witness-law of 1861, where a party to an action was called as a witness by the adverse party, and, on his examination, gave testimony not responsive to the inquiries addressed to him, then the party calling him might offer himself as a witness as to the matter embraced in said testimony.

APPEAL from the *Miami* Common Pleas.

HANNA, J.—Suit to recover damages for the non-fulfillment of a contract, as follows:

"Memorandum, etc., made this 25th day of November, 1857, by *Burns & Daniels*, of the first part, and *Little & Co.*, of the second part, witnesseth: that the parties of the first part, agree to furnish and deliver, to said party of the second part, at the depot of the *Toledo*, etc., road, one hundred barrels flour, of an extra quality, etc.; and more, to the amount of five hundred barrels, if said *Little & Co.* should wish; and in consideration, etc., said parties of the second part, agree to advance said *Daniels & Burns* money, from

time to time, to purchase wheat, for the purpose of making said flour. The wheat, so purchased, to be paid for at the same price paid at *Peru*, or lower if possible, and for every five bushels, so bought, the said *D. & B.* are to deliver one barrel of flour as agreed, said *Little & Co.* to pay for hauling said flour to *Peru*, at a sum not exceeding one shilling per barrel; said flour to be delivered as fast as made, and all to be delivered by the first day of January, 1858, and *D. & B.* hereby acknowledge the receipt of two hundred dollars, as an advance on said contract."

The breach charged, was, that *Daniels & Burns* failed to deliver at, etc., the one hundred barrels of flour, or any part thereof, and have also failed to repay said two hundred dollars, and the interest thereon.

*Answer.* 1. Denial. 2. That the plaintiff, before the time had expired for the delivery, etc., demanded, and the defendants repaid, said sum advanced, and interest thereon, in full settlement, etc. 3. That the defendants were, on, etc., at, etc., the owners of a mill, at which wheat was to be purchased, and said flour was to be manufactured; that, from the time of making said contract, until the first of January, when, etc., owing to high waters and the impassable condition of the roads leading to said mill, they were unable to purchase wheat, at *Peru* prices, out of which to manufacture flour; and that the market price, at said mills, was, during, etc., five cents per bushel higher than at *Peru;* and that they repaid said sum, etc. 4. Avers a demand of the money advanced, on the 10th day of January, 1858, and the repayment thereof, and five dollars interest, and that thereby said contract became rescinded.

*Reply.* General denial to the whole answer; and, second, as to the third paragraph, that on the 15th of December, 1857, the defendants had in their possession five hundred bushels of wheat, purchased with the money of the plain-

Daniels and Another *v*. Little and Others.

tiffs, with which they might have made one hundred barrels of flour, etc., but that they failed, etc.

Trial; general verdict for the plaintiffs, and finding on special interrogatories. Questions are made upon the ruling, upon the admission of, and refusal to admit, evidence, and upon instructions given and refused.

The Court refused to permit the defendants to introduce evidence to sustain the third paragraph of their answer. This ruling involves the construction that should be given to the agreement. As the plaintiffs were to have a barrel of flour for every five bushels of wheat purchased, and were to furnish the money to buy the wheat, it was, of course, to their interest to procure it at as low a rate as possible. They might have fixed the precise rate, beyond which the defendants were not permitted to go. They did not do so in figures, but agreed that a greater price, or sum, than was paid at *Peru*, should not be paid by the defendants at their mills, which, the answer shows, were six miles from that point.

It is urged, that this provision in the agreement should not be construed as forbidding the defendants from purchasing, on account of the plaintiffs, but merely as limiting the price at which the plaintiffs were to furnish money, namely, *Peru* prices, and that the defendants assumed the risk of procuring the article at that price. If they could not, it would be their loss, but could not excuse them from performing. We do not think this is the proper construction, or legal effect, of the agreement. In other words, we think the third paragraph of the answer was valid, and, as a consequence, evidence should have been received to sustain it. The language used is, that "the wheat, so purchased, to be paid for at the same price paid at *Peru*, or lower if possible." Whatever might have been the construction of this sentence, without the latter branch, it is certainly shown by that portion of it, that the defendants were the persons who were to make the purchases, at the *Peru* price, or lower if

possible. This being so, it operated as a limitation upon them, and they were not permitted to go beyond it, at the expense of the plaintiffs, and, we suppose, could not be compelled to, at their own expense, as it does not appear that they were to furnish any of the money to make the purchases with.

The trial, in this case, came off on the 8th day of March, 1861. The defendants introduced one of the plaintiffs as a witness, and asked him the following question: "State whether, about the 1st of January, 1858, or soon after that time, you did not call on the defendants, and demand the repayment of the two hundred dollars you had advanced to the defendants on the contract?" The witness answered: "Some time, I *think*, in *February* or March, 1858, I called on the defendants, and demanded the money I had advanced them. They paid me two hundred dollars I had advanced them. This was in my warehouse, on the canal, in *Peru*, and was paid by *Daniels*, and was two hundred dollars, and no more, we retaining our right for damages."

The plaintiffs then asked the same witness this question, which was answered, over the defendants' objection, as follows: "State whether or not, at the time of the contract with the defendants, you had a contract for the sale of the same flour in the State of *Maine*, and if so, whether you informed the defendants of that fact or not?" *Answer:* "I had a contract for the sale of the flour I was to receive from the defendants, in the State of *Maine*, for nine dollars and a half per barrel. I told the defendants, at the time of making the contract, I had the flour contracted. Do not recollect whether I told them where. Did not tell them what price. I told them to fix the longest time for the delivery of it, and not disappoint me. Wheat was worth, in June, when the contract was made, about sixty cents a bushel, and on the 1st of January, 1858, about sixty-five cents. I have been a miller, and have made a barrel of flour

out of four bushels and fifteen pounds of good wheat. It ordinarily takes four bushels and a half to make a barrel of flour. Do n't know the cost of shipping a barrel of flour from *Peru* to the State of *Maine;* at that time, freight was very high. I think it could not have been more than one dollar and seventy-five cents a barrel."

Was this testimony responsive to the inquiry put to the witness? 2 R. S., p. 96; if it was not, then the Court erred in the next ruling, which was against permitting the defendant, *Daniels,* to testify as to the payment of said two hundred dollars and interest, and the understanding, at the time of the payment, relative to the sum being in full, and intended to close up the matter between the parties. The statement of the plaintiff, that the right to damages was retained, notwithstanding the demand and reception of the money advanced, does not seem to be in direct response to the inquiry put to him, in relation to such demand and reception. The suit is for the two hundred dollars advanced, as well as for damages. The inquiry was directed solely to the former branch of the demand, and did not touch the question of damages, proper, resulting from the non-fulfillment of the contract. Suppose the suit had been for such damages alone, the inquiry, so far as we understand it, would not have been pertinent to the issue.

The plaintiff, then, having gone beyond a due response to the inquiry put, and testified as to another branch of the case or cause, of damages, not included in such inquiry, the defendant had a right to be heard as a witness upon the same matter.

No point is raised, and we decide nothing, as to the right to join a demand for the recovery of the money advanced, with a demand for damages for the non-fulfillment of the contract.

Another question arises upon this evidence, and the other, of a kindred nature, which was introduced, as well as the

instruction based thereon, in relation to the measure of damages, when considered in connection with the place of delivery, and the fulfillment of another contract, then held by the plaintiffs, with some other persons, at a distant point from the place where said defendants were to make such delivery.

The statute then was, that a party introduced as a witness, by the adverse party, might testify in his own behalf as to any matter pertinent to the issue. *Id.*

No averments are contained in the complaint, relative to any special damages resulting from the non-fulfillment, by the plaintiffs, of some other contract, because of the breach of this by the defendants; if such averment would have been valid, or such damages legitimate, are questions that do not, therefore, arise, and about which we say nothing.

That part of the testimony of the plaintiffs, and the instructions based thereon, in relation to the contract in *Maine*, should not have been received or given. It was not relevant to the issues made.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*Harvey J. Shirk* and *Lyman Walker*, for the appellants.

*N. O. Ross* and *R. P. Effinger*, for the appellees.